UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KAHLIA J. ENGLISH,                                  Case No. 1:20-cv-884
        Plaintiff,                                  Cole, J.
                                                    Litkovitz, M.J.
        vs.

JIM NEIL, et al.,                                   REPORT AND
        Defendants.                                 RECOMMENDATION

Plaintiff, a former prisoner at the Hamilton County Justice Center (HCJC), brings this

action against defendant Major Jackie Reed (Reed), a deputy sheriff at HCJC, under 42 U.S.C. §

1983.  (Doc. 12 [complaint]; Doc. 57 [amended complaint]).[1]  This matter is before the Court on

defendant's motion for summary judgment (Doc. 70), plaintiff's response in opposition (Doc.

72), and defendant's reply memorandum (Doc. 78).  Defendant Reed argues she is entitled to

summary judgment because plaintiff failed to exhaust his administrative remedies, and

alternatively, she is entitled to qualified immunity.

## I. Factual Background and Statement of Case

Plaintiff alleges defendant Reed was deliberately indifferent to his safety when she failed

to protect him from an attack by his cellmate while he was incarcerated at the HCJC in violation

of the Eighth Amendment.  (Doc. 12; Doc. 57).  Plaintiff alleges he was told by an officer he

would have cellmate.  In response, he told the officer he would like to be alone due to the "high

profile" nature of his case.  (Doc. 57 at PAGEID 361).  After the cellmate joined him, plaintiff

alleges his cellmate told officers and plaintiff that if he was not provided with his own cell, he

would kill plaintiff.  (Id.; Doc. 12 at PAGEID 154).  Plaintiff alleges he informed HCJC officers

---

[1] Following *sua sponte* screening of plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), the only
remaining claim in this civil action is plaintiff's Eighth Amendment failure to protect claim against defendant Reed
in her individual capacity.  (Doc. 13).

of the threat to his safety, but defendant Reed instructed another officer to leave plaintiff in the cell.  (*Id*.).  Plaintiff alleges that he was subsequently attacked by his cellmate with a razor after he went to sleep on October 6, 2020.[2]  (*Id*. at PAGEID 158).

In his complaint, plaintiff acknowledges HCJC has a prisoner grievance procedure and that he presented the facts relating to the altercation through the grievance procedure.  (Doc. 12 at PAGEID 152).[3]  As to the steps he took, he stated in his complaint that "[he] told officer[,] filed complaint[,] nothing done[.]"  (*Id*.).

Defendant Reed has filed a motion for summary judgment arguing plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PRLA) because he did not file an appeal of the denial of his grievance.  (Doc. 70).  In support of her motion, defendant Reed attaches the declaration of William C. Wietmarschen, the Assistant Office Manager and Grievance Coordinator for the Hamilton County Sheriff's Office.  (Doc. 68 Wietmarschen Decl., at PAGEID 384-85).

Mr. Wietmarschen attaches a copy of the Hamilton County's Sheriff's Office Policy and Procedure for the Inmate Grievance Process to his declaration.  (Doc. 68-2 at PAGEID 398-403).  The HCJC grievance procedure consists of two steps:  (1) an initial grievance and (2) an appeal.

---

[2] There appears to be a discrepancy regarding the date of the altercation although it will have no bearing on the outcome of the case.  In plaintiff's complaint (Doc. 12), he states the incident occurred on October 6, 2020.  In his amended complaint (Doc. 57), he does not list the date the altercation occurred.  However, the record contains a copy of a grievance filed by plaintiff on October 2, 2020, wherein he described the altercation set forth in the amended complaint.  (Doc. 68-1 at PAGEID 388).  Additionally, plaintiff has vaguely alleged he was attacked again a week later; other than this statement, he offers no further facts in support of this allegation.  (Doc. 12 at PAGEID 158).

[3] Plaintiff's original complaint is referenced here because his amended complaint likely contains a typographical error.  In his amended complaint, he checked the box marked "No" to the following question:  Did you present the facts relating to your complaint to the state prisoner grievance procedure?  (Doc. 57 at PAGEID 360).  He explained that he answered "no" because the place of confinement had been typed as "Trumbull Correctional Istitution" (sic), while the incident happened at HCJC.  (*Id*.).

(*Id*. at PAGEID 398).  Specifically, the HCJC grievance policy relating to appeals states as follows:

> When a grievance cannot be resolved to the inmate's satisfaction by action at the department-head level within ten (10) days, the inmate may file an appeal to the Administrative Captain or Support Service Captain assigned to the Justice Center Complex whose area is affected.  The inmate must request the appeal form from the Classification Specialist and file the appeal within ten (10) business dates [sic] of receipt of the original response.

(*Id*. at PAGEID 402).

Mr. Wietmarschen avers the grievance policy and procedures are contained in the Inmate Handbook.  (Doc. 68 at PAGEID 384-85).  He further states that "[a] portion of that policy and procedure explaining how to file a grievance and how to appeal a grievance that was not resolved to the inmate's satisfaction is posted on the walls of housing areas within the Hamilton County Justice Center."  (*Id*. at PAGEID 384-85).

Mr. Wietmarschen states that he performed a search to locate grievances filed by plaintiff.  (*Id*.).  He located an October 2, 2020 grievance that matches plaintiff's allegations relating to the altercation with his cellmate.  Plaintiff's grievance states:

> On this day they moved Mr. Davis over to my room.  [H]e called in over and over telling them to move him or he will kill me.  I went to lay down and was assaulted. I will be filling (sic) a lawsuit.  [T]he C.O. did nothing.  Duty (sic) Lee told him Lt. Reed told him to leave him in there with me.

(*Id*. at PAGEID 388).

HCJC Captain Frank Shuber investigated plaintiff's grievance.  (Doc. 68-1 at PAGEID 386).  After doing so, he informed plaintiff in a "Grievance Response Form" dated October 16, 2020 of the following:

> After talking with Lt. Reed she stated that you voiced your displeasures about having a cellmate, but she was not aware of any threats of violence.  Due to current strains on the housing of inmates at the justice center, and an ongoing pandemic, inmates that were previously celled alone, have had to be celled together from time

3

to time. A single cell is not a qualified right, classifications and supervisors make
every effort to house everyone safely and appropriately.

(*Id.*). Plaintiff refused to sign the form. (*Id.*). Mr. Wietmarschen avers that plaintiff did not file

an appeal. (Doc. 68 at PAGEID 385).

Plaintiff files several exhibits with his response to defendant Reed's motion,[4] but none of

these exhibits includes an appeal of plaintiff's grievance. Nor has plaintiff disputed that he did

not file a grievance appeal. Rather, plaintiff alleges that "he complied with the PRLA to the best

of his ability with the information he had available." (Doc. 72 at PAGEID 422). He argues the

documents he received did not inform him of his right to appeal. (*Id.* at PAGEID 425-26). He

does not dispute receiving a copy of the handbook outlining the grievance process or Mr.

Wietmarschen's averment that these procedures are posted on HCJC's walls in the housing area.

Instead, he argues the handbook is "too vague and ambiguous for an inmate to determine when

or what he or she should appeal." (*Id.* at PAGEID 425).

Plaintiff also contends that the response to his grievance did not specifically state that his

grievance was "denied." (*Id.* at PAGEID 424-25). Plaintiff asserts that Captain Shuber did "not

answer the grievance clearly so plaintiff was not able to know he had to appeal." (*Id.* at

PAGEID 426).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court

demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

---

[4] Plaintiff's exhibits include his request for production of documents, interrogatories, and defendant's responses
(Doc. 73-1 at PAGEID 435-447); an inmate grievance report (Doc. 73-2 at PAGEID 448); a copy of a grievance
response form (Doc. 73-3 at PAGEID 449); an investigator's report (Doc. 73-4 at PAGEID 450); an investigator's
report involving one of plaintiff's cellmates (Doc. 73-5 at PAGEID 451-52); the grievance form filed by plaintiff
(Doc. 73-6 at PAGEID 453-54); and defendant's interrogatories and request for production of documents, and
plaintiff's responses (Doc. 73-7 at PAGEID 455-461).

4

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'"  *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).  The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party.  *Satterfield v. Tenn.*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at 249.  The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Analysis

#### 1. Exhaustion of Remedies

Defendant Reed argues plaintiff's claims cannot survive summary judgment under the PLRA because he failed to exhaust his administrative remedies by not completing HCJC's two-step process for addressing inmate grievances. The Court agrees.

Congress enacted the PLRA in 1996 to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). To achieve these objectives, the PLRA requires that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." *Johnson v. Barney*, No. 1:21-cv-141, 2024 WL 755441, at *3 (S.D. Ohio Feb. 23, 2024) (quoting 42 U.S.C. § 1997e(a)). Accordingly, exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ."

*Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

Exhaustion may be excused where the grievance process is unavailable, which includes:

(1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb v. Kendrick*, 52 F.4th 286, 292-93 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). In order to rely on the excuse of unavailability of the grievance process, a prisoner must first demonstrate he made "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Id.* at 293 (citation omitted).

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendant Reed bears the burden of proof on exhaustion. *Id.*

In this case, it is undisputed that plaintiff did not exhaust the administrative remedies available to him through HCJC's policy and procedures for inmate grievances. After he received a response to his initial grievance, plaintiff took no further steps to comply with HCJC's internal

grievance process. Plaintiff presents no evidence that he in fact filed an appeal after he received Captain Shuber's response to his grievance.

Nevertheless, plaintiff argues he can show an exception to the exhaustion requirement under *Ross*. But before plaintiff can argue the HCJC grievance procedure was unavailable, he must make an initial showing:

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)).

*Lamb*, 52 F.4th at 293. Plaintiff does not dispute that he failed to make any efforts to initiate the second step of the process by filing an appeal or attempting to file an appeal as required by HCJC's grievance procedures. Because the record fails to show plaintiff "ma[d]e affirmative efforts" to comply with step two of the grievance process, defendant Reed should be granted summary judgment on the exhaustion issue.

Even if plaintiff had pointed to evidence that he did something to file an appeal, he fails to create a genuine issue of fact showing the grievance procedure was unavailable to him. Plaintiff has not argued that he satisfies the first exception to the exhaustion requirement – that the HCJC grievance procedures operates as a "dead end." *Ross*, 578 U.S. at 643. Nor does he contend that HCJC officials thwarted his efforts at filing an appeal to satisfy the third exception. *Id*. at 644. Plaintiff appears to argue that he qualifies for the second exception – where the grievance process is so confusing that no ordinary prisoner could discern or navigate it. *Id*. Plaintiff contends the HCJC handbook "is too vague and ambiguous for an inmate to determine when or what he or she should appeal" resulting in the "inmate not being able to utilize the procedure appropriately." (Doc. 72 at PAGEID 425).

8

Plaintiff has not produced evidence creating a genuine issue of material fact that HCJC's grievance process is "so opaque" or "so confusing" to the ordinary inmate to render a remedy "unavailable." *Ross*, 578 U.S. at 644. Instead of presenting evidence to meet this exception, plaintiff presents a set of queries in his response to defendant Reed's motion as to how HCJC's policy may be subject to different "interpretations." His queries include: "what does it mean for a grievance to be resolved to an inmate [sic] satisfaction?" (Doc. 72 at PAGEID 425). And "despite a resolution can an inmate still appeal?" (*Id*.). He also argues that because the grievance response form did not specifically state that his grievance was "denied," he was not informed of the outcome of his grievance and thus did not know he should initiate the appeal process. (*Id*. at PAGEID 425-26).

Plaintiff's unsupported assertions and queries do not create an issue of fact as to whether the HCJC grievance process was opaque or confusing. The grievance policy sets forth in a straightforward manner the timelines and method for filing an appeal that is understandable to an ordinary prisoner. An inmate may file an appeal on any grievance not resolved to his satisfaction within 10 days. (Doc. 68-2 at PAGEID 402). The process spells out to whom an appeal is to be filed — the Administrative Captain or Support Service Captain assigned to the Justice Center Complex whose area is affected. (*Id*.). The handbook also specifies from whom an inmate may obtain an appeal form, i.e., from the Classification Specialist. Finally, the HCJC procedure advises inmates that appeals must be file within 10 business day of "receipt of the original response." (*Id*.). Contrary to plaintiff's argument, a grievance need not be "denied" before an inmate may appeal. Instead, the right to appeal is premised on the inmate's dissatisfaction with the response to his grievance. Therefore, plaintiff's right to appeal depended on whether he was satisfied with Captain Shuber's response to his grievance whether or not the

9

response specified his grievance was "denied."  The "Grievance Response Form" on which Captain Shuber set forth his response to plaintiff's grievance would have informed "an ordinary prisoner" that HCJC had completed its initial review process of his grievance.  (*Id*. at PAGEID 386).  There is no ambiguity here.

Plaintiff also contends the handbook explains that jail staff members are to ensure an adequate supply of forms, instructions, and assistance by staff, if requested, for filing a grievance.  (Doc. 72 at PAGEID 427).  He argues the same is not true for pursuing an appeal.  (*Id.*).  Plaintiff contends that a reasonable jury could infer that HCJC intends to "downplay[] with a purpose to discourage appeals and thus prevent an inmate from full compliance with the PRLA."  (*Id.*).

Regardless of whether more detailed guidance is provided for step one, this does not make the policy for step two vague or ambiguous.  HCJC's policy directs what an inmate must do to continue the inquiry into step two of the process.  It sets out that an "inmate must request the appeal form from the Classification Specialist and file the appeal within ten (10) business dates [sic] of receipt of the original response."  (Doc. 68-2 at PAGEID 402).  This is sufficient to inform plaintiff of what he needed to do, and the policy is neither vague nor ambiguous.

Moreover, plaintiff's argument that the documents he received did not inform him of his right to appeal does not provide an avenue of relief for him under an exception.  (Doc. 72 at PAGEID 425-26).  "A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy."  *Napier*, 636 F.3d at 221, n. 2 (citing *Brock v. Kenton Cty.*, 93 F. App'x 793, 797-98 (6th Cir. 2004) (unpublished); *Castro v. Crawfoot*, 102 F. App'x 852, 853-54 (5th Cir. 2004) (per curiam); *Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001); *Molina– Crespo v. United States Merit Sys. Prot. Bd.*, 547 F.3d 651, 662 (6th Cir. 2008)).  Moreover,

plaintiff had at least constructive knowledge of HCJC's appeal procedures through the inmate handbook and the postings of the grievance procedures on the walls of the jail.  *Id.*

Plaintiff's unsupported assertions about step two of the grievance process are not evidence and do not show the process is "so opaque" or "so confusing" that "no ordinary prisoner can discern or navigate it."  *Ross*, 578 U.S. at 644-45.  Plaintiff has failed to create an issue of fact on the second *Ross* exception to exhaustion.  His alleged "best efforts" to comply with the PLRA fall far short of what is required for his case to proceed.  *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1997) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies. . . .") (citations omitted).

In conclusion, defendant Reed has met her burden by offering proof that plaintiff did not comply with the PLRA's exhaustion requirement while plaintiff has failed to counter that proof or present evidence creating a genuine issue of material fact requiring resolution by a fact finder. Accordingly, defendant Reed is entitled to summary judgment, and the Court recommends her motion (Doc. 70) be granted.

### 2.     Qualified Immunity

Defendant Reed's affirmative defense of exhaustion of remedies is dispositive of all plaintiff's claims.  As such, the Court need not reach her argument that she is entitled to qualified immunity.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Defendant Reed's motion for summary judgment on exhaustion grounds (Doc. 70) be **GRANTED** and that plaintiff's failure to protect claim against defendant Reed be **DISMISSED**.

11

2.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting the Report and Recommendation would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 203 (2007).

Date: 4/24/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

12

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KAHLIA J. ENGLISH,                                    Case No. 1:20-cv-884
      Plaintiff,                                       Cole, J.
                                                       Litkovitz, M.J.

      vs.

JIM NEIL, et al.,
      Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).